UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY BOHL,

       Plaintiff,

v.                  1:11-CV-0699
                   (GTS/DRH)
CONSTR. AND GEN. LABORERS LOCAL UNION
190; and CONSTR. AND GEN. LABORERS LOCAL
UNION 190 PENSION FUND,

       Defendants.
_____

APPEARANCES:            OF COUNSEL:

LAW OFFICE OF PAUL F. DWYER      PAUL F. DWYER, ESQ.
 Counsel for Plaintiff
399 Albany-Shaker Road, Suite 204
Albany, NY 12211

JAMES E. LONG & ASSOCIATES, P.C.     JAMES E. LONG, ESQ.
 Counsel for Defendants
668 Central Avenue
Albany, NY 12206

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

    Currently before the Court, in this employee pension-benefits action filed by Gary Bohl ("Plaintiff") against the two above-captioned entities ("Defendants"), are Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment. (Dkt. No. 19; Dkt. No. 20.) For the reasons set forth below, Defendants' motion is granted, Plaintiff's cross-motion is denied, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, Plaintiff's Amended Complaint alleges as follows. (Dkt. No. 7.) On or about June 14, 2010, Plaintiff applied for early-retirement benefits under Defendants' pension benefit plan ("the Plan"). (*Id.*) However, he was wrongfully denied benefits in violation of the terms of the Plan. (*Id.*) Based on these factual allegations, and liberally construed, Plaintiff's Amended Complaint asserts two claims against Defendants: (1) a claim that, by wrongfully denying him early-retirement benefits dating back to June 14, 2010, Defendants have violated the Employee Retirement Income Security Act ("ERISA") and related federal regulations; and (2) a claim of breach of contract under New York State common law. (*Id.*) Familiarity with the factual assertions supporting these claims is assumed in this Decision and Order, which is intended primarily for the review of the parties.

### B. Undisputed Material Facts

Generally, based on the current record, the following factual assertions are undisputed by the parties. (*See generally* Dkt. No. 19 [Defs.' Rule 7.1 Statement]; Dkt. No. 20, Attach. 6 [Plf.'s Rule 7.1 Statement]; Dkt. No. 23 [Plf.'s Rule 7.1 Response].)

On or about June 14, 2010, Plaintiff met with the Plan administrator, Dominick Gerace ("Gerace"), in Gerace's office, regarding applying for early-retirement benefits under the Plan. At the time, Plaintiff was age 55, and had been a member of Defendants for more than 30 years. During the meeting, Plaintiff filled out a pension application except that he did not provide a response to Question Number A.5, which asked, "Date You Choose for [the] starting date of your benefits." (Dkt. No. 19, Attach. 1, at 9, 12, 18-20 [Tr. of Plf.'s Depo.]; Dkt. No. 19, Attach.

2, at 11-12, 26-27, 29-31, 34-37 [Tr. of Gerace Depo.]; Dkt. No. 19, Attach. 10, at ¶¶ 4-5 [Gerace Affid.]; *cf.* Dkt. No. 19, Attach. 5, at 1 [Second Application for Pension Benefits]; Dkt. No. 20, Attach. 4, at 1 [Second Application for Pension Benefits].)[1] A notation under that question stated, inter alia, "Please remember that the starting date of your benefit cannot be . . . before you cease working in covered employment." (Dkt. No. 19, Attach. 5, at 1 [Second Application for Pension Benefits]; Dkt. No. 20, Attach. 4, at 1 [Second Application for Benefits].) The Plan indicated, in pertinent part, that "[i]f you work *any* hours in the Trade before age 62, you are not entitled to a monthly benefit." (Dkt. No. 19, Attach. 4, at 40 [attaching page "38" of Summary Plan Description] [emphasis in original].) Gerace expressed concern as to whether Plaintiff would be eligible for benefits due to his desire to continue to work. (Dkt. No. 19, Attach. 2, at 11-14, 29-31 [Tr. of Gerace Depo.].)

At some point during approximately July or August of 2010, Gerace conferred by telephone with Ludwig Bach ("Bach"), an actuary who advises the Board of Trustees ("the Board") on numerous issues. (Dkt. No. 19, Attach. 3, at 25-29 [Tr. of Bach. Depo.]; Dkt. No. 19, Attach. 2, at 19-21 [Tr. of Gerace Depo.].) After hearing Gerace describe Plaintiff's circumstance, Bach advised Gerace of his opinion that Plaintiff would be ineligible if he applied for pension benefits at that time. (*Id.*)

---

[1] The Court notes that, while the record does not contain a copy of the pension application that was filled out in June 2010, it is undisputed that the June 2010 pension application was filled out on the same form on which the January 2011 pension application was filled out, except that the latter form contained an amended provision regarding members who were age 62. (Dkt. No. 19, Attach. 2, at 26-27, 30-31 [Tr. of Gerace Depo.]; Dkt. No. 20, Attach. 1, at ¶ 9 [Plf.'s Affid.].)

In approximately January of 2011, Plaintiff returned to Gerace's office to fill out another pension application. Again, Plaintiff did not provide a response to Question Number A.5 of the form application, nor did he even date the application. (Dkt. No. 19, Attach. 5, at 1, 4 [Second Application for Pension Benefits]; Dkt. No. 19, Attach. 1, at 20-22 [Tr. of Plf.'s Depo.]; Dkt. No. 19, Attach. 2, at 30-33 [Tr. of Gerace Depo.]; Dkt. No. 19, Attach. 10, at ¶¶ 5-6 [Gerace Affid.].) Gerace expressed the same concern that he had expressed in his June 2010 meeting with Plaintiff, i.e., regarding whether Plaintiff would be eligible for benefits due to his desire to continue to work. (Dkt. No. 19, Attach. 2, at 31-33 [Tr. of Gerace Depo.].)

The Plan provides an internal procedure for the processing of claims. (Dkt. No. 19, Attach. 4 [Summary Plan Description].) In pertinent part, the Plan states that a member seeking retirement benefits "must *complete* a retirement application form." (*Id.* at 41 [attaching page "39" of Summary Plan Description] [emphasis added].) Once a decision has been rendered by the Plan administrator, the Plan provides an appeals process pursuant to which, upon receiving the written request of the appellant, the Board will review the adverse decision. (*Id.*) The Plan gives the Board discretion to waive a suspension of benefits at any time. (*Id.* at 42 [attaching page "40" of Summary Plan Description].)

### C. Parties' Briefing on Their Motions

#### 1. Parties' Briefing on Defendants' Motion for Summary Judgment

Generally, in support of their motion for summary judgment, Defendants assert two arguments: (1) Plaintiff's claim under ERISA should be dismissed for failure to exhaust the Plan's administrative remedies before filing suit because, based on the current record, it is undisputed that (a) he failed to complete a pension application, and/or failed to file an appeal

from any denial of such an application, and (b) the exhaustion requirement is not excused under the circumstances by either futility or ignorance of the administrative procedure; or (2) in the alternative, Plaintiff was precluded from receiving retirement benefits, because he was engaged in "significant active employment in the Trade" (meaning work for any number of hours in the Trade) under the Plan. (*See generally* Dkt. No. 19, Attach. 12 [Defs.' Memo. of Law].)

Generally, in his response, Plaintiff argues that Defendants' motion should be denied for the following two reasons: (1) Plaintiff exhausted his administrative remedies because he did what he been instructed to do by Gerace and, in any event, the exhaustion requirement should be excused, because (a) Plaintiff was unaware of the exhaustion process, (b) Gerace and Ludwig acted in bad faith, (c) Gerace's position regarding Plaintiff's eligibility establishes futility, (d) Ludwig's position regarding Plaintiff's eligibility establishes futility, (e) the Board's "unilateral" decision "that plaintiff was not going to be allowed to collect pension benefits while he was working at his current job" establishes futility, and (f) Defendants' position in this litigation establishes futility; and (2) moreover, Plaintiff was not precluded from receiving retirement benefits due to his continued work in the "Trade or Craft," because his current work as a "project superintendent" is "completely different" from his prior work as a "laborer." (*See generally* Dkt. No. 22, Attach 1 [Plf.'s Opp'n Memo. of Law].)

### 2. Parties' Briefing on Plaintiff's Cross-Motion for Summary Judgment

Generally, in support of his cross-motion for summary judgment, Plaintiff argues that an analysis of the relevant ERISA and Code of Federal Regulations factors leads inexorably to the conclusion that Plaintiff is not currently working in "the Trade or Craft" (given that his current job as a "project superintendent" and his prior job as a "laborer" have very different job

5

descriptions and classifications, even if they are in the same "industry"). (*See generally* Dkt. No. 20, Attach. 11 [Plf.'s Memo. of Law].)

Generally, in their response, Defendants argue that an interpretation of the same factors relied on by Plaintiff leads inexorably to the conclusion that he is indeed currently working in "the Trade or Craft" for three alternative reasons: (1) because Plaintiff was (and is) younger than age 62, the standard to which Plaintiff is held under the Plan is not "Active Employment in the Trade" (which uses the term "laborer"), but "Significant Active Employment in the Trade," which is expressly defined as "work for *any* hours in the Trade" (and does not use the term "laborer"); (2) in any event, the term "Significant Active Employment in the Trade" is not limited to individuals "actually working" as "laborers" but extends to individuals "supervising such work," and (3) in any event, Plaintiff admitted in both his deposition and résumé that his work before June 2010 included work as a "project superintendent" in the construction industry for more than 10 years. (*See generally* Dkt. No. 21 [Defs.' Opp'n Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

## B. Legal Standards Governing Plaintiff's Claims

The Second Circuit has acknowledged a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). While there is no statutory requirement that plaintiffs exhaust administrative processes before filing an action in federal court, "courts have 'developed the requirement that a claimant should ordinarily follow internal plan procedures and exhaust internal plan remedies before seeking judicial relief under ERISA.'" *See Sibley-Schreiber v. Oxford Health Plans (N.Y.), Inc.*, 62 F. Supp.2d 979, 985 (E.D.N.Y. 1999); *see also Ludwig v. NYNEX*, 838 F. Supp. 769, 781 (S.D.N.Y. 1993). Courts developed this requirement in construing Section 1133 of ERISA, which requires all benefit plans to provide internal review procedures for claims disputes. *Ludwig*, 838 F. Supp. at 781. As the Second Circuit has explained,

> The primary purposes of the exhaustion doctrine are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.

*Kennedy*, 989 F.2d at 594. "[The] [e]xhaustion [of administrative remedies requirement] in the context of ERISA requires only those administrative appeals [procedures] provided for in the relevant plan or policy." *Id.* Moreover, the exhaustion requirement is excused where the claimant makes a "clear and positive" showing of futility. *Id.*[2] To fall within the futility

---

[2] According to a survey of applicable case law conducted by a district judge in 1993, the futility doctrine has historically been applied in federal courts in only a half-dozen circumstances, including the following: (1) "where there is a material issue of fact as to whether the plaintiff was informed of the appeals process"; and (2) "when the plan fiduciary acted in bad faith, in breach of its fiduciary duties." *See Ludwig*, 838 F. Supp. at 781-82.

7

doctrine, claimants must "show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." *Sibley-Schreiber*, 62 F. Supp. at 986. If futility is established, then the purposes for the exhaustion doctrine would no longer be served and the exhaustion requirement is waived. *Shamoun v. Bd. of Tr.*, 357 F. Supp.2d 598, 604-05 (E.D.N.Y. 2005).

### III. ANALYSIS

#### A. Whether Plaintiff Exhausted His Administrative Remedies

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memoranda of law. *See, supra,* Part I.C. of this Decision and Order. The Court would add only the following analysis.

The relevant provision of the Plan provided that, "[i]f you want to start or resume retirement benefits, you must *complete* a retirement application form." (Dkt. No. 19, Attach. 4, at 39 [Summary Plan Description].) Here, it is undisputed that Plaintiff never *completed* a retirement application. (Dkt.19, Attach. 1, at 20 [Tr. of Bohl Depo.].) Granted, Plaintiff did leave an application with Gerace. However, Plaintiff omitted from that application the date for starting benefits. (*Id.*) This incomplete application failed to trigger the internal procedures, which Plaintiff was required to exhaust. Indeed, without the referenced date, an initial determination for eligibility could not be made by Gerace. Because this initial determination was never made, there existed no decision from which Plaintiff could appeal to the Board (which was an internal procedure that was also required by the Plan). (Dkt. No. 19, Attach. 4, at 39 [Summary Plan Description].)

Plaintiff argues that he exhausted his administrative remedies because he simply did what he was instructed to do by Gerace. However, that is not the governing legal standard. Exhaustion requires a claimant to "follow internal plan procedures," including "those administrative appeals provided for in the relevant policy." *Ludwig*, 838 F. Supp. at 781; *see also Davenport*, 249 F.3d at 134. Because Plaintiff failed to file a completed application, and because Plaintiff failed to appeal from an initial administrative decision, Plaintiff failed to exhaust his administrative remedies.

B.  **Whether the Exhaustion Requirement Was Excused**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memoranda of law. *See, supra,* Part I.C. of this Decision and Order. The Court would add the following two points.

First, this case does not fall into a category in which the futility doctrine has traditionally been applied. *See, supra,* note 2 of this Decision and Order. Plaintiff argues that the futility doctrine applies in this case because "there is a material issue of fact as to whether . . . [P]laintiff was informed of the appeals process." *Ludwig*, 838 F. Supp at 782 (specified as a traditional circumstance where the futility doctrine has applied). The Court respectfully disagrees. For the sake of brevity, the Court will not linger on the fact that the Summary Plan Description described the appeals process. (Dkt. No. 19, Attach. 4, at 41-42 [attaching pages "39" and "40" of Summary Plan Description].) More important is the fact that Plaintiff was informed of the appeals process when he was given a benefits application, which contained a notice that described the appeals process in full. (Dkt. No. 19, Attach. 5, at 14-15 [Suspension of Benefits Notice].) Even if the Court were to assume that Plaintiff never read the notice, the Court would

9

find that he became aware of the appeals process once this litigation commenced. The Second Circuit has held that a plaintiff cannot rely on his ignorance of the claim procedure when he has been informed of that procedure through litigation (and has continued to fail to satisfy the exhaustion requirement). *See Davenport*, 249 F.3d at 134.

Plaintiff also argues that the futility doctrine applies in this case because Gerace, the Plan fiduciary, acted in bad faith. *Ludwig*, 838 F. Supp. at 782-83 (specifying bad faith during the breach of a fiduciary duty as a traditional circumstance in which the futility doctrine has been applied). More specifically, Plaintiff argues that Gerace acted in bad faith by telling Plaintiff that he would not consider or process the pension application(s) that Plaintiff presented. Again, the Court respectfully disagrees. Any fair reading of the record evidence compels the conclusion that, regardless of whether Gerace accepted Plaintiff's pension applications for filing, Plaintiff twice chose not to complete the pension application. This fact, standing alone, is fatal to his claim. *See Cappiello v. NYNEX*, 92-CV-3896, 1994 WL 30429, at *4 (S.D.N.Y. Feb. 2, 1994) (characterizing plaintiff's argument for skirting internal procedures that she ignored as "a position contrary to both the plan and the case law"). In any event, the assertions of misconduct leveled at Gerace do not rise to a level that would establish bad faith: while Gerace's statements may have discouraged Plaintiff from applying, Gerace did not ignore Plaintiff's questions, nor did he deny Plaintiff's requests for an application. As a result, the case relied upon by Plaintiff is distinguishable. *See Riggs v. A.J. Ballard Tire & Oil Co., Inc. Pension Plan and Trust*, 979 F.2d 848 (4th Cir. 1995) (affirming district court's finding of futility based upon an administrator's bad faith where the administrator effectively hindered the plaintiff from filing an application by repeatedly ignoring the plaintiff's claim and failing to supply him with the information necessary to file a claim).

Plaintiff similarly argues that Gerace and Ludwig acted in bad faith by conducting an incomplete investigation of Plaintiff's circumstance. For the sake of brevity, the Court will assume that Ludwig was a fiduciary capable of triggering the futility exception through the exercise of bad faith–although that fact is far from clear based on the current record. *See Eaves v. Designs for Finance*, Inc., 785 F. Supp.2d 229, 261 (S.D.N.Y. 2011) (holding that an actuary who renders advice to an employee benefit plan is not a fiduciary to the plan absent an additional showing, such as a showing that the actuary possesses discretionary authority). In any event, a plaintiff cannot assert bad faith on the ground of an incomplete investigation when he subsequently failed to administratively appeal an initial adverse decision, thus foreclosing the opportunity for a more-thorough investigation. *See Saladin v. Prudential Ins. Co. of Am.*, 337 F. App'x 78, 80 (2d Cir. 2009) ("Even if we assume that, at the first step of review, Prudential employees overlooked or unreasonably failed to gather material evidence, Saladin had the opportunity to identify those errors and seek administrative correction. We cannot say that she would have succeeded, only that administrative rejection of her challenge was not a foregone conclusion.").

Second, setting aside the categories in which the futility doctrine has traditionally been applied, Plaintiff fails to make any other "clear and positive" showing of futility. Plaintiff argues that Gerace's determination that he should be denied benefits is sufficient to establish futility. However, informal decisions made by a fund administrator are typically characterized as *de facto* denials that cannot establish futility. *See Barnett v. Int'l Bus. Mach. Corp.*, 885 F. Supp. 581, 589 (S.D.N.Y. 1995); *see also Sibley-Schreiber*, 62 F. Supp.2d at 986 ("[A]n allegation of futility is not satisfied by the mere showing that a claim was denied when initially presented.").

Moreover, because a determination by Gerace is but one step in Defendants' administrative process, that determination has no bearing on whether an appeal to the Board, as set forth in the Plan, would have been futile. *See Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, 517 F. Supp.2d 646, 652 (W.D.N.Y. 2007) ("[T]he mere fact that an administrator denied a claim cannot be sufficient to prove that an appeal would have been futile.").

Plaintiff also argues that an appeal to the Board would have been futile because Bach has similarly determined that Plaintiff is not entitled to benefits. However, Bach, like Gerace, is not a member of the Board and does not possess a vote during an appeal. While Bach may be in a position to influence the Board, even a "firm stance" taken by like individuals has been found to be insufficient to establish futility. *See, e.g.*, *Schein v. News Am. Publ'g, Inc.*, 89-CV-0052, 1989 WL 56255, at *3-4 (S.D.N.Y. May 23, 1989) (stating several board members' "firm stance[s]" on a benefits determination was not enough to establish futility). Simply stated, Bach does not have the power to deny or grant Plaintiff benefits. As a result, Bach's determination is not controlling.
This is especially true in light of the fact that the Plan gives the Board the discretion to waive a suspension of benefits at any time, and resume the payment of benefits despite a violation of the provisions at issue in this case. (Dkt. No. 19, Attach. 4, at 42 [attaching page "40" of Summary Plan Description].)

Plaintiff similarly argues that an appeal to the Board would have been futile because, as he asserts the testimony of Gerace and Bach indicated, the Board "declared unilaterally without any chance of a different result that plaintiff was not going to be allowed to collect pension benefits while he was working at his current job regardless of whether or not it constituted

significant employment in the trade . . . ." (Dkt. No. 22, Attach 1, at 6 [attaching page "3" of Plf.'s Opp'n Memo. of Law].) Again, the Court respectfully disagrees. A fair reading of Gerace's testimony reveals that he "may have talked to" one Board member (Anthony Fresina) "about [Plaintiff's] case," specifically, that Plaintiff "was applying for a pension and he may not qualify for it." (Dkt. No. 19, Attach. 2, at 22-23, 39-40 [Tr. of Gerace Depo.].) A rational fact finder could not conclude from this fact that the Board made a "unilateral" declaration regarding Plaintiff's eligibility. Moreover, Bach's testimony indicated that the Board held a meeting on or about January 28, 2011, during which it "broad[ly]" discussed a policy that would suspend payments for early retirees who worked "any hours in the Trade." (Dkt. No. 19, Attach. 3, at 31-34 [Tr. of Bach Depo.]; *see also* Dkt. No. 19, Attach. 4, at 40 [attaching page "38" of Summary Plan Description].) This testimony does not constitute the required showing (i.e., a showing of "certain[ty]")[3] as to how the Board would interpret the word "Trade" in Plaintiff's circumstance, nor as to whether the Board would exercise its discretion to waive a suspension of benefits.[4] Indeed, Plaintiff argues that, during the time in question, the Board did not have sufficient information to form an opinion as to whether he continued to work "in the Trade." (Dkt. No. 22,

---

[3] *See, supra,* Part II.B. of this Decision and Order (setting forth legal standard governing Plaintiff's claims).

[4] While an interrogatory response, dated August 20, 2012, indicates that the Board would "likely" deny Plaintiff's claim on appeal (Dkt. No. 19, Attach. 7, at ¶¶ 3, 5 [Defs.' Resp. to Interrog.]), the Court finds that this does not establish either the "certain[ty]" of a denial or the "clear and positive" showing of futility for two independent reasons: (1) a "likel[ihood]" of a denial is significantly less than the "certain[ty]" of a denial or a "clear and positive" showing of futility, *see Tardi v. Citicorp Sec., Inc.*, 96-CV-5419, 1996 WL 724727, at *4 (S.D.N.Y. Dec. 7, 1996) (finding that "speculative" adverse decision was not a "clear and positive showing" of futility); and (2) what the Board believed on August 20, 2012, is of little materiality to what the Board believed between June 14, 2010, and August 24, 2011 (the date of Plaintiff's Amended Complaint).

Attach. 1, at 4 [Plf.'s Opp'n Memo. of Law].) This argument is supported by the record, which indicates that the only individuals who expressed such an opinion were Ludwig and Gerace–two non-members of the Board. Even if Ludwig or Gerace informally stated that the Board shared that view, those statements would be insufficient to establish futility. *See Barnett*, 885 F. Supp. at 589 (noting that the threshold showing for futility is "very high" and "informal representations of the views of a committee" are not a sufficient basis for claiming futility). Because Plaintiff has failed to point to a "certain" position by the Board on the ultimate issue of granting his benefits, Plaintiff has failed to make a "clear and positive" showing of futility.[5]

Finally, Plaintiff argues that, because Defendants have endorsed Gerace's and Ludwig's interpretation of the Plan in their memorandum of law, exhausting administrative remedies would be futile. If the Court were to accept Plaintiff's argument that a post-filing position may establish futility, such a ruling would effectively undermine the exhaustion doctrine's purpose. *See Commc'n Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 433 n.1 (D.C. Cir. 1994). By filing a complaint, a plaintiff requires a defendant to file an answer, in which the defendant often must assert multiple defenses. Those defenses are then often pursued during the course of

---

[5] The Court notes that a lack of a formal administrative decision in this case creates an additional hurdle that Plaintiff must overcome, because the Plan gives the Board complete discretion over interpretation of the Plan's terms. (Dkt. No. 19, Attach. 4, at 3 [Summary Plan Description].) Indeed, even the Code of Federal Regulations factors referenced in the Plan give an administrator broad discretion in determining whether an individual is working in the same trade or craft. In such a situation, the Supreme Court requires a district court to engage in an "arbitrary and capricious" standard of review of the administrative decision. *See Piazza v. Corning, Inc.*, 421 F. Supp.2d 575, 579 (W.D.N.Y. 2005) (citations omitted). However, if the Court were to deny Defendants' motion for summary judgment, the Court would be forced to engage in a *de novo* review of the issue of Plaintiff's eligibility. Such a result would be at odds with Supreme Court precedent and would frustrate the exhaustion doctrine's purpose of "assur[ing] . . . any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Kennedy*, 989 F.2d at 594 (citations omitted).

litigation–by dispositive motion or at trial. Allowing a plaintiff to establish futility by relying on a defense asserted in litigation would create what is effectively an escape hatch from the administrative exhaustion requirement–an escape hatch that would almost always, if not always, be present. Because the purpose of the exhaustion requirement is to "uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts," the Court is not inclined to establish precedent that would frustrate that purpose. *Kennedy*, 989 F.2d at 594.

For all of the reasons stated above in Parts III.A. and III.B. of this Decision and Order, the Court dismisses Plaintiff's ERISA claim. As for the nature of the dismissal, the dismissal is without prejudice to refiling upon exhaustion. *See Saladin v. Prudential Ins. Co. of Am.*, 337 F. App'x 78, 78 (2d Cir. 2009) (affirming district court's dismissal of ERISA claim without prejudice to refiling upon exhaustion).

      **C.**     **Defendants' Alternative Ground for Dismissal of Plaintiff's ERISA Claim**

As stated above in Part I.C.1. of this Decision and Order, Defendants' alternative ground for the dismissal of this claim is that Plaintiff was precluded from receiving retirement benefits, because he was engaged in "significant active employment in the Trade" (meaning work for any number of hours in the Trade) under the Plan.

In their opposition to Plaintiff's cross-motion, Defendants expand on this argument, by explaining that (1) the standard to which Plaintiff is held under the Plan is not "Active Employment in the Trade" (which uses the term "laborer"), but "Significant Active Employment in the Trade" (which is expressly defined as "work for *any* hours in the Trade"), (2) in any event, the term "Significant Active Employment in the Trade" is not limited to individuals "actually working" as "laborers" but extends to individuals "supervising such work," and (3) in any event,

Plaintiff admitted in both his deposition and résumé that his work before June 2010 included work as a "project superintendent" in the construction industry for more than 10 years. *See, supra,* Part I.C.2. of this Decision and Order.

Despite the admitted appeal of this argument, the Court declines to decide the merit of it, because (1) an independent ground already exists upon which to base the granting of Defendants' motion, and (2) the Court is reluctant to conduct the sort of *de novo* review referenced above in note 5 of this Decision and Order.

### D. Plaintiff's State Law Claim of Breach of Contract

"Where a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise jurisdiction over state law claims." *Hurley v. Cnty. of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug. 31, 2005) (citing 28 U.S.C. § 1367[c][3]), *accord, Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar. 10, 2009) (Suddaby, J. adopting Report-Recommendation of Homer, M.J.); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims.").

Here, because the Court has already dismissed Plaintiff's ERISA claim, and in the interest of efficiency and fairness, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law breach-of-contract claim. That claim is dismissed without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 7) is **DISMISSED**, his ERISA claim being dismissed without prejudice to refiling upon exhaustion, and his state-law breach-of-contract claim being dismissed without prejudice.

Dated: March 31, 2014
        Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge